# IN THE COURT OF APPEALS OF IOWA

No. 18-1595
Filed November 21, 2018

**IN THE INTEREST OF T.J.,**
**Minor Child,**

**S.C., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Nancy L. Pietz, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Karl Wolle of Juvenile Public Defender Office, Des Moines, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

Sarah appeals the termination of her parental relationship with seven-year-old T.J. She argues the State failed to prove the statutory grounds for termination by clear and convincing evidence; termination would be detrimental to T.J. because of the parent-child bond; and termination is not necessary because T.J. is living with Sarah's mother. After reviewing the record anew,[1] we reach the same conclusions as the juvenile court. We thus affirm the termination of Sarah's parental rights.

The family first came to the attention of the Department of Human Services (DHS) in December 2016 when the DHS received reports Sarah and T.J.'s father, Travis, were using methamphetamine while caring for T.J. Travis also assaulted Sarah in T.J.'s presence. Both parents have a long history of substance abuse and mutual domestic violence.

The court ordered the DHS to remove T.J. from his parents' care. The DHS placed T.J. with his maternal grandmother, Vicki, where he has remained throughout this case. At the time of removal, Sarah and Travis tested positive for methamphetamine and opiates. Travis reported he and Sarah used methamphetamine daily. Sarah reported Travis struck her in front of T.J. T.J. also said he saw his dad hit his mom. This incident resulted in a founded child abuse assessment against Sarah and Travis, as well as criminal charges against Travis,

---

[1] Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

who already had a lengthy criminal record. The court ordered the parents to attend substance abuse treatment and individual and couples therapy to address their drug abuse, mental health, and domestic violence issues.

For the next year, the DHS offered services to the parents. Sarah completed substance abuse treatment and tested negative for drugs. Sarah and Travis attended couples therapy together. But Travis was inconsistent in his substance abuse treatment and mental health therapy, impeded somewhat by repeated stints in jail on unrelated charges. In January 2018, the court allowed a six-month extension for the parents to continue working toward reunification. In February 2018, despite informing the DHS their relationship was over, Sarah and Travis resumed living together.

At the time of the termination hearing, the DHS reported Travis continued to take prescribed narcotics for various injuries despite his addiction to opiates.[2] Because of these prescriptions, he gave several positive drug tests. The tests also revealed substances not accounted for by his prescriptions. He did not complete substance abuse treatment, and denied on the stand that he had a substance abuse problem. He also testified he had only been high around T.J. a couple times, contradicting his and Sarah's earlier admissions. Travis further denied ever assaulting Sarah.

---

[2] DHS workers reported concerns Travis may not have informed his medical providers of his addiction history; they also suggested Travis engaged in drug-seeking behavior through self-injury.

Sarah showed more promise in her efforts to regain custody. She successfully completed drug treatment and maintained her sobriety. She was generally meeting case expectations and court orders.

But domestic violence concerns continued to cloud Sarah's prospects for reunification. At the termination hearing, Sarah recanted earlier statements that Travis assaulted her in December 2016. Originally, she reported Travis punched and slapped her, giving her a swollen eye. But at the hearing she testified they were mutually pushing and shoving each other and she received the eye injury from a fall. Sarah also testified she believed Travis had adequately addressed his substance abuse and domestic violence issues, despite his failure to complete any treatment. She did not plan for Travis to move out if T.J. was returned to her care. In fact, she testified Travis did not pose a safety risk to her or T.J.

As for T.J., DHS workers agreed he had a strong attachment to his mother. T.J. has special needs—attention deficit disorder and a possible diagnosis on the autism spectrum. He has an individualized education plan for learning delays. To address those delays, Vicki hired a tutor. Vicki testified T.J. is now thriving in her care. He attends therapy to address the trauma he experienced while living with Sarah and Travis. Vicki testified Sarah and Travis were not ready to resume custody of T.J. DHS workers believed Vicki showed the willingness, preparation, and protective capacity necessary to be a successful long-term placement.

The State petitioned to terminate parental rights. Following a hearing, the court ordered termination of both Sarah and Travis's parental rights under Iowa Code section 232.116(1)(f) (2018).[3] Only Sarah appeals.

Sarah first contends the State failed to prove the grounds for termination under Iowa Code section 232.116(1)(f), which requires proof of the following elements:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Sarah challenges only the fourth element—arguing the State did not show by clear and convincing evidence T.J. could not be returned to her custody. She contends she complied with DHS expectations to attend substance abuse treatment and therapy. She emphasizes she maintained her sobriety throughout the case.

We recognize Sarah made strides in substance abuse treatment and DHS workers noted no safety concerns during her visits with T.J. But her continued cohabitation with Travis presents a serious risk to their son. Travis did not complete substance abuse treatment or address his domestic violence history. So those issues remain threats to T.J.'s safety—particularly because Sarah refuses to acknowledge any risk, instead believing Travis has put those issues behind him.

---

[3] The petition alleged termination was also appropriate under subparagraph (*l*), but the juvenile court found the State failed to prove that ground.

On top of her blind faith in Travis going forward, Sarah has engaged in revisionist history. She now denies any domestic abuse in their relationship. Her denial and lack of insight present a danger she will fall into old patterns with Travis. Sarah and Travis also have a history of abusing drugs together. Their continued cohabitation increases her risk of relapse. Placing T.J. back in that environment risks harm to his safety and well-being. The State presented clear and convincing proof T.J. cannot be returned to Sarah at this time. Sarah already received one six-month extension to resume custody. We cannot ask T.J. "to continuously wait for a stable biological parent, particularly at such [a] tender age." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). So we affirm the juvenile court's conclusion that the evidence supports termination under paragraph (f) of section 232.116(1).

Sarah next contends termination is not in T.J.'s best interests and would result in emotional and psychological harm.[4] In determining whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We agree the evidence shows T.J. is attached to Sarah. But the record does not support her claim terminating her parental rights would cause him emotional or psychological harm. He has been out of her custody for two years and is thriving with the appropriate therapy and care supplied by his grandmother. Returning T.J. to live with his father whose rights have been

---

[4] Sarah mentions T.J.'s bond with her as part of the best-interests argument. But she does not invoke the statutory exception contained in section 232.116(3)(c), based on the closeness of the parent-child relationship. So we analyze her claim only under section 232.116(2).

terminated and his mother who lacks the protective capacity to guard against future violence would be inconsistent with the child's best interests.

Finally, Sarah contends the court should have decided termination was not necessary because the DHS placed T.J. with his maternal grandmother. The court "need not terminate" parental rights if the court finds, among other factors, a relative has legal custody of the child. *Id.* § 232.116(3)(a). This factor is permissive, not mandatory, and at the discretion of the court. *In re A.S.*, 906 N.W.2d at 476.[5] The child's best interests remain the first consideration. *Id.* The juvenile court considered this factor and determined the circumstances did not support its application. We agree. Placement with his grandmother should not save the parental relationship under these circumstances. *See A.M.*, 843 N.W.2d at 112–13 (concluding child placed with maternal grandparents was not in their "legal custody"). Finally, while Sarah is likely to continue to have some contact with T.J. through the grandmother, the safety concerns posed by Sarah's continued relationship with Travis suggest termination should proceed.

**AFFIRMED.**

---

[5] Our review remains de novo. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).